UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, AND APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND *et al.*,

Petitioners,

-v-

BLACKSTAR MECHANICAL GROUP 740 INC.,

Respondent.

23 Civ. 3163 (JPC)

OPINION AND ORDER

JOHN P. CRONAN, United States District Judge:

Petitioners Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund; Trustees of the New York City Carpenters Relief and Charity Fund; and the Carpenter Contractor Alliance of Metropolitan New York have petitioned to confirm an arbitration award (the "Award") issued against Respondent Blackstar Mechanical Group 740 Inc. ("Blackstar"). Petitioners also seek to recover attorneys' fees and costs that they have incurred in bringing this Petition to confirm that Award. The Petition is unopposed, as Blackstar did not appear at the underlying arbitration hearing, has not opposed confirmation of the Award, and has not even appeared before this Court. For the reasons below, the Petition is granted, but with a reduction in Petitioners' request for attorneys' fees.

## I. Background

### A. Facts

Petitioners bring this action under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), *as amended*, 29 U.S.C. § 185, to confirm and enforce an arbitrator's award rendered under a collective bargaining agreement (the "CBA" or the "Agreement") involving the New York City District Council of Carpenters (the "Union") and Blackstar. Dkt. 1 ("Petition") ¶ 1. Petitioner Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Petition ¶ 4. Petitioner Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund") are trustees of a charitable organization established under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). Petition ¶ 5. Petitioner Carpenter Contractor Alliance of Metropolitan New York (collectively with the ERISA Funds and the Charity Fund, the "Funds" or "Petitioners") is a New York not-for-profit corporation. *Id.* ¶ 6. During the relevant period, Blackstar "was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142." Petition ¶ 7.

Blackstar entered into an Independent Millwright Agreement—that is, the CBA—with the Union on August 26, 2020. *Id.* ¶ 10; Dkt. 1-2 (CBA). The CBA covered the period of July 1, 2017 through June 30, 2021, and was automatically extended for one-year intervals at the expiration of this time period such that, per Petitioners' information and belief, it remained in

effect at the time of the Petition. *See* Petition ¶¶ 10-12; CBA art. XVI. The CBA in relevant part "requires [Blackstar] to furnish its books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions." Petition ¶ 14; *see* CBA art. XI § 2(b).

The CBA also generally mandates arbitration for disputes "aris[ing] between the parties" to the Agreement and entitles the arbitrator to "fashion an appropriate remedy including, but not limited to, monetary damages and all other remedies permitted by federal or state law." CBA art. XI § 13; Petition ¶¶ 17-18. Separately, "[t]he Trustees of the Funds established a Revised Statement of Policy for Collection of Employer Contributions" (the "Collection Policy") that in relevant part entitles the Funds to "reasonable attorneys' fees and costs" in the event that the Funds are "required to arbitrate a dispute or file a lawsuit over unpaid contributions." Petition ¶¶ 16, 19; *see* Dkt. 1-7 ("Collection Policy") § V.[1]

As relevant here, "the Funds attempted to conduct an audit of Blackstar covering the period October 6, 2020 to date" in an attempt to verify that Blackstar had made its required contributions, but Blackstar "did not produce all records requested for purposes of completing the audit." Petition ¶¶ 20-21; *see* Dkt. 1-9 ("Award") at 3. The Funds then instituted arbitration proceedings pursuant to the CBA before Arbitrator Jeffrey G. Stein. Petition ¶ 22. Arbitrator Stein issued a notice of hearing on December 22, 2022 and held the hearing on January 25, 2023. *See* Dkt. 1-8 (notice); Petition ¶¶ 22-23. Blackstar did not appear at the hearing. *See* Award at 3. After receiving witness testimony and other evidence, Arbitrator Stein found that Blackstar violated the CBA by failing to permit the "auditors to examine its [b]ooks [and r]ecords" and consequently ordered Blackstar to

[1] The CBA mandates that employers covered by the Agreement are bound "by all regulations and by-laws adopted by the Trustees [of the Funds]." CBA art. XI § 5; *see* Petition ¶ 15.

"produc[e] books and records for the [a]udit to proceed." Award at 4. He also awarded the Funds $2,900, which consisted of (1) attorneys' fees of $1,500; (2) court costs of $400; and (3) the arbitration fee of $1,000. *Id.* at 3-4. Arbitrator Stein ordered "interest to accrue [on the Award amount] at the annual rate of 9.5 [percent] from the date of this Award." *Id.* at 4.

**B.      Procedural Background**

On April 17, 2023, Petitioners filed the instant Petition, Dkt. 1, as well as a memorandum of law in support of confirmation of the Award, Dkt. 5 ("Memo of Law"). Blackstar was served with the summons and Petition on June 13, 2023 through the New York Secretary of State. Dkt. 9. Petitioners also served Blackstar with the Petition at the company's last known business address on June 5, 2023. Dkt. 7; *see* Petition ¶ 9. On July 17, 2023, having received no response from Blackstar, the Court ordered Blackstar to respond to the Petition by August 7, 2023 and warned Blackstar that the Petition would be treated as an unopposed motion for summary judgment if it failed to respond. Dkt. 13; *see D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109-10 (2d Cir. 2006). Petitioners served this Order on Blackstar the following day. Dkt. 14. On August 23, 2023, the Court provided Blackstar with a final opportunity to respond by September 6, 2023, and once again warned Blackstar that the Petition would be treated as an unopposed motion for summary judgment if it failed to do so. Dkt. 15. Petitioners served this Order on Blackstar the following day. Dkt. 16. Blackstar has neither submitted an opposition to the Petition nor otherwise appeared in this action.

## II.  Discussion

**A.      The Arbitration Award**

**1.      Applicable Law**

"The LMRA establishes a federal policy of promoting industrial stabilization through the collective bargaining agreement, with particular emphasis on private arbitration of grievances."

*Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (internal quotation marks omitted). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court," and "[o]nly a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted).

As a result, judicial review of an arbitration award is "limited to determining whether the arbitration proceedings and award met the minimum legal standards established by" the LMRA. *Nat'l Football League Mgmt. Council*, 820 F.3d at 532. The Court "must simply ensure that the arbitrator was even arguably construing or applying the contract and acting within the scope of his authority and did not ignore the plain language of the contract." *Id.* (internal quotation marks omitted). Under this standard, "even if an arbitrator makes mistakes of fact or law, [a district court] may not disturb an award so long as [the arbitrator] acted within the bounds of his bargained-for authority." *Id.* In other words, "[a]s long as the award draws its essence from the collective bargaining agreement and is not merely the arbitrator's own brand of industrial justice, it must be confirmed." *Id.* at 537 (internal quotation marks omitted).

If, as here, a petition to confirm an arbitration award is unopposed, courts generally treat the petition "as akin to a motion for summary judgment." *D.H. Blair & Co.*, 462 F.3d at 109. Although the Court grants significant deference to the arbitrator's decision, an unopposed confirmation petition must "fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* at 110 (internal quotation marks omitted).


**2.   Analysis**

Petitioners have adequately shown that there is no genuine issue of material fact precluding judgment in their favor confirming the Award. Arbitrator Stein found that Blackstar was bound by the CBA, which requires Blackstar to permit the Funds' auditors to inspect its books and records. Award at 2; *see* CBA art. XI § 2(b). As noted, the CBA also provides for arbitration if a dispute occurs. CBA art. XI § 13. Arbitrator Stein observed that Blackstar had "legally sufficient notice" of the arbitration proceeding yet failed to attend. Award at 2; *see* Dkt. 1-8 (notice). Accordingly, Arbitrator Stein "found [Blackstar] to be in default and proceeded to hear the testimony and take evidence on" Petitioners' claims. Award at 3. He concluded, based on "substantial and credible evidence," that Blackstar violated the CBA's books and records inspection provision and thus ordered it to "produc[e] books and records for the [a]udit to proceed," in addition to issuing the $2,900 monetary award consisting of attorneys' fees, court costs, and the arbitration fee. *Id.* at 4.

These findings adhered to the terms of the CBA and were well within the bounds of Arbitrator Stein's authority. Pursuant to the CBA, "[t]he arbitrator shall have full and complete authority to decide any and all issues raised by submission and to fashion an appropriate remedy including, but not limited to, monetary damages and all other remedies permitted by federal or state law." CBA art. XI § 13(a); *see* Petition ¶ 18. Additionally, as noted above, the Collection Policy provides that, should the Funds have to arbitrate a dispute or sue over unpaid contributions, the Funds may collect reasonable attorneys' fees and costs incurred by the Funds in collecting the delinquencies. Collection Policy § V; *see* Petition ¶ 19. "Although Petitioners have not presented this Court with copies of all the materials on which the arbitrator relied, there is no reason to doubt the arbitrator's interpretation of those materials." *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. CEI Contractors Inc.*, No. 21 Civ. 7870 (JPC), 2022 WL 3225680, at *3

(S.D.N.Y. Aug. 10, 2022) (internal quotation marks omitted). Moreover, "nothing suggests that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law." *Id.* (internal quotation marks omitted). The Court therefore confirms Petitioners' timely application for confirmation of the Award.

**B. Petitioners' Application for Attorneys' Fees and Costs in Connection with this Litigation**

**1. Applicable Law**

Petitioners request $1,364 in attorneys' fees and $77 in costs arising out of their efforts in bringing this action to confirm the Award. Petition ¶¶ 31-38. Generally, "in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award," which Section 301 of the LMRA does not provide. *Int'l Chem. Workers Union, Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985) (citations omitted). But a court may award attorneys' fees "[p]ursuant to its inherent equitable powers . . . when the opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (internal quotation marks omitted). "[W]hen a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded." *Id.* (internal quotation marks omitted).

In determining whether a requested fee is reasonable, courts look to the total hours billed and the rates at which those hours were billed. "A reasonable hourly rate is what a reasonable, paying client would be willing to pay." *N.Y.C. & Vicinity Dist. Council of Carpenters v. Plaza Constr. Grp., Inc.*, No. 16 Civ. 1115 (GHW), 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016) (internal quotation marks omitted). An attorney's hourly rate is considered reasonable when it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

To allow the Court to determine whether time was reasonably expended, "[a]pplications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). These applications should exclude "[h]ours that are excessive, redundant, or otherwise unnecessary." *Id.* (internal quotation marks omitted).

**2. Analysis**

Blackstar has failed to appear or defend this action and has not justified its failure to abide by Arbitrator Stein's decision. *See N.Y.C. Dist. Council of Carpenters Pension Fund v. Angel Const. Grp., LLC*, No. 08 Civ. 9061 (RJS), 2009 WL 256009, at *3 (S.D.N.Y. Feb. 3, 2009) ("Here, Defendant has failed to appear or in any way defend this confirmation action, and thus it is axiomatic that Defendant has offered no justification for its failure to abide by the Award."). And the Collection Policy provides for an assessment of "[a]ll recoverable costs actually incurred in court . . . to enforce the Funds' right to conduct a payroll review and/or audit of the employer's records." Collection Policy § V(7); *see* Petition ¶¶ 19, 30. Thus, the Court holds that an award of attorneys' fees and costs for Petitioners' efforts to confirm the Award is proper in this case.

In support of their application for attorneys' fees, Petitioners have submitted an invoice from their law firm, Virginia & Ambinder, LLP ("V&A"), reflecting 4.4 hours of associate and law clerk time billed at a rate of $310 per hour. Petition, Exh. K ("Billing History"); *see* Petition ¶¶ 31-38. After reviewing Petitioners' counsel's time records, the Court first finds the 4.4 hours spent on this case to be reasonable and not duplicative, and notes that associates or law clerks instead of partners performed the work in this case, which prevented that work from being billed at higher rates.

The Court next turns to the requested hourly rates. Maura Moosnick, a 2021 graduate of Fordham Law School and an associate at V&A, billed 0.4 hours in this matter at a rate of $310 per

hour. *See* Billing History; Petition ¶ 33. In line with judges of this District, including the undersigned, the Court reduces Ms. Moosnick's rate to $275 per hour. *See Tr. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Precision Furniture Installations, LLC*, No. 23 Civ. 2852 (JHR), 2024 WL 1381309, at *8 (S.D.N.Y. Apr. 1, 2024) (collecting cases); *Tr. of N.Y.C. District Council of Carpenters Pension Fund v. Regal USA Concrete Inc.*, No. 22 Civ. 8202 (JPC), 2023 WL 8644513, at *6 (S.D.N.Y. Aug. 9, 2023). "The latter rate [of $275 per hour] is the more appropriate one for associates with Ms. Moosnick's experience . . . ." *Precision Furniture Installations*, 2024 WL 1381309, at *8 (internal quotation marks omitted). Matthew Vani is a law clerk at V&A who billed four hours in this matter at a rate of $310 per hour. *See* Billing History; Petition ¶ 34. He is a 2022 graduate of St. John's University School of Law who was not yet admitted to the bar at the time the Petition was filed. *See* Petition ¶ 34. The Court finds that $310 per hour "is too high for a . . . law clerk who has not yet been admitted to the bar." *Precision Furniture Installations*, 2024 WL 1381309, at *8 (internal quotation marks omitted). The Court finds that an hourly rate of $225 is more appropriate given Mr. Vani's experience at the time of his work on this case. *See id.* (same); *Regal USA Concrete Inc.*, 2023 WL 8644513, at *6 (same).

  Petitioners' request for attorneys' fees in connection with this litigation therefore is granted, albeit at the reduced rates discussed above. Petitioners are thus entitled to $1,024 in attorneys' fees. The Court also awards $77 in costs consisting of service fees incurred. *See* Petition ¶ 38; Memo of Law at 7; *see also Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. CEI Contractors Inc.*, No. 21 Civ. 7870 (JPC), 2022 WL 3225680, at *5 (S.D.N.Y. Aug. 10, 2022) (granting the petitioners $77 in costs).

**C. Pre- and Post-Judgment Interest**

Finally, the Court turns to Petitioners' requests for pre- and post-judgment interest.

As for pre-judgment interest, Petitioners request that the Court award interest at the annual rate of 9.5 percent—the post-Award amount set by Arbitration Stein—for the period between the issuance of the Award on January 25, 2023 and the date judgment enters in this action. *See* Petition at 7; Award at 4. "The Second Circuit has noted that in the context of actions to confirm arbitration awards there is 'a presumption in favor of prejudgment interest.'" *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Coastal Env't Grp., Inc.*, No. 16 Civ. 6004 (GHW), 2016 WL 7335672, at *3 (S.D.N.Y. Dec. 16, 2016) (quoting *Waterside Ocean Navigation Co. v. Int'l Navigation Ltd*., 737 F.2d 150, 154 (2d Cir. 1984)). "Accordingly, district courts in this Circuit have exercised their discretion to award prejudgment interest when confirming arbitration awards under collective bargaining agreements pursuant to § 301 of the LMRA, when the CBAs indicated that an arbitration award was 'final and binding.'" *Id.* (internal quotation marks omitted). Given that such is the case here, the Court will award pre-judgment interest at an annual rate of 9.5 percent. *See* CBA art. XI § 13.

The Court also awards post-judgment interest at the statutory rate "from the date of the entry of the judgment." 28 U.S.C. § 1961(a).

**III. Conclusion**

For the foregoing reasons, the Petition is granted and the Award is confirmed. Blackstar is ordered to provide Petitioners with access to the relevant books and records requested, pursuant to the terms of the Award. The Clerk of Court is respectfully directed to enter judgment of (1) the arbitration award of $2,900, in addition to pre-judgment interest accrued at 9.5 percent per annum from January 25, 2023 through the date of the entry of judgment; (2) $1,101 in attorneys' fees and

costs in connection with this litigation; and (3) post-judgment interest to accrue at the statutory rate pursuant to 28 U.S.C. § 1961.  The Clerk of Court is also respectfully directed to close this case.

SO ORDERED.

Dated: May 6, 2024
      New York, New York

                                           JOHN P. CRONAN
                                     United States District Judge